# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Anthony Watson,
    Petitioner


    vs
                                  Case No. 1:02cv828
                                        (Beckwith, J.; Black, M.J.)


Pat Hurley,
    Respondent


---

## REPORT AND RECOMMENDATION

---


Petitioner, an inmate in state custody at the Ross Correctional Institution in Chillicothe, Ohio, brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition and respondent's return of writ. (Docs. 1, 5).

### Procedural Background

In March 2000, the Hamilton County, Ohio, grand jury indicted petitioner on one count of aggravated robbery as defined in Ohio Rev. Code §2911.01(A)(1), with two firearm specifications and a repeat violent offender specification, and on one count of robbery as defined in Ohio Rev. Code § 2911.02(A)(2). (Doc. 5, Ex. 1). After a trial by jury, petitioner was found guilty of all charges. (Doc. 5, Ex. 5). Merging the two counts, the court sentenced petitioner to ten years with an additional three year consecutive sentence for the firearm specifications (also merged) and an additional five year consecutive sentence for the repeat violent

offender specification. (Doc. 5, Ex. 5).

With the assistance of counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, raising the following assignments of error:

> 1. The trial court erred to the prejudice of defendant-appellant by not granting his motion for relief from prejudicial joinder.
>
> 2. The trial court erred to the prejudice of defendant-appellant by not granting his motion to suppress the search of the automobile.
>
> 3. The trial court erred to the prejudice of defendant-appellant by allowing the prosecution to dismiss two of the three black jurors.
>
> 4. The trial court erred to the prejudice of defendant-appellant by not admitting the government report into evidence.
>
> 5. The jury erred to the prejudice of defendant-appellant by finding him guilty of aggravated robbery and robbery under Ohio Rev. Code Sections 2911.01 and 2911.02 as that finding was not supported by sufficient evidence.
>
> 6. The jury erred to the prejudice of defendant-appellant by finding him guilty of aggravated robbery and robbery under Ohio Rev. Code Sections 2911.01 and 2911.02 as that finding was contrary to law.

(Doc. 5, Ex. 6). Petitioner filed a supplemental brief, raising an additional assignment of error, as follows:

> 7. The court erred when it sentenced Watson to additional time beyond the maximum as a repeat violent offender.

(Doc. 5, Ex. 8). On May 30, 2001, the Ohio Court of Appeals affirmed the trial court's judgment. (*Id.,* Ex. 10). The appellate court made the following findings of fact with respect to the offenses involved:

> The state produced evidence that two men had approached Frierson, drawn their guns on him and taken his wallet, a gold chain, and a

leather coat.  Frierson later identified Watson and McBride as the men
who had robbed him.

(*Id.*).

Petitioner timely appealed to the Supreme Court of Ohio, raising the same
claims he presented to the Ohio Court of Appeals.  (*Id.*, Ex. 14).  On September 26,
2001, the Supreme Court of Ohio dismissed the appeal as not involving any
substantial constitutional question.  (*Id.,* Ex. L).

Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28
U.S.C. § 2254, raising the following grounds for relief and supporting facts which
are quoted verbatim:

**GROUND ONE:** The trial court erred to the prejudice of defendant-
appellant by not granting his motion for relief from prejudicial
joinder.

Supporting facts: Where joinder of two defendants at trial will
prejudice one or both defendants, it is error to not grant relief from
such joinder.

**GROUND TWO:** The trial court erred to the prejudice of defendant-
appellant by not granting his motion to suppress the search of the
automobile.

Supporting facts: The evidence found during the search of the
automobile should have been suppressed, as the search was illegal.

**GROUND THREE:** The trial court erred to the prejudice of
defendant-appellant by allowing the prosecutor to dismiss two of the
three black jurors.

Supporting facts: The prosecution should not have been allowed to
peremptorily challenge the two black jurors because of their race.

**GROUND FOUR:** The trial court erred to the prejudice of the
defendant-appellant by not admitting the goverment [sic] report inot

3

[sic] evidence.

Supporting facts: The Eyewitness Evidence Guide to Law Enforcement should have been admitted, as defense's expert witness helped create it, it was not a treatise, and was not hearsay.

**GROUND FIVE:** The jury erred to the prejudice of the defendant-appellant by finding him guilty of aggravated robbery and robbery uner [sic] Ohio Rev. Code Sections 2911.01 and 2911.02, as that finding was not supported by sufficient evidence.

Supporting facts: The state failed to meet its burden of proving that defendant-appellant was guilty of aggravated robbery and robbery.

**GROUND SIX:** The jury erred to the prejudice of the defendant-appellant by finding him guilty of aggravated robbery and robbery under Ohio Rev. Code Sections 2911.01 and 2911.02, as that finding was contrary to law.

Supporting facts: When a finding is against the manifest weight of the evidence, defendant-appellant is entitled to a new trial.

(Doc. 1, Habeas Petition at pp. 5-6).

In the return of writ, respondent argues that the petition lacks merit. (Doc. 5).

## OPINION

## I. Petitioner is not entitled to relief with respect to his first claim of improper joinder.

As his first ground for relief, petitioner contends that the trial court improperly denied his motion to sever his trial from that of his co-defendant. Petitioner contends that had the trial judge granted petitioner's motion, the co-defendant would have provided exculpatory evidence on behalf of petitioner.

4

Under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). A federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

When a state court fails to address the constitutional issues raised, the federal court conducts a *de novo* review, instead of applying the AEDPA's standard of review which applies only to cases "adjudicated on the merits in state court." *Maples v. Stegall,* 340 F.3d 433, 436-437 (6th Cir. 2003) (finding that in *Wiggins v. Smith,* 539 U.S. 510 (2003), the Supreme Court reviewed *de novo* portion of claim not analyzed by state court, without deferring to the state court or applying AEDPA's standard of reasonableness); *see Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003); *Davis v. Secretary for the Dep't of Corrections,* 341 F.3d 1310, 1312 (11th Cir. 2003).

The Ohio Court of Appeals rejected petitioner's claim of improper joinder, as follows:

> The joinder of defendants to avoid multiple trials is favored in the law. Joinder is the rule rather than the exception, and relief from joinder is within the sound discretion of the trial court. Further, a defendant asserting that joinder is improper must make an affirmative showing that his rights will be prejudiced if a separate trial is not granted.

> Watson argues that he sought to use McBride's testimony to show that he was not with McBride at the time of the robbery, and that the two had not seen each other until hours later. But Watson failed to demonstrate below that he would be prejudiced as a result of the joinder. The court's refusal to grant separate trials did not prevent Watson from presenting an alibi defense. In fact, his girlfriend testified that Watson was with her at the time of the robbery.

> Furthermore, there was no guarantee that McBride would testify at Watson's trial, because Mc Bride might have asserted his Fifth Amendment right against self-incrimination. Neither Watson nor McBride testified at their joint trial. And McBride did not present a defense that was antagonistic to Watson's defense. Rather each man maintained that he had nothing to do with the robbery, and each presented an alibi defense that

6

attempted to exculpate himself, but not to inculpate his co-defendant. Moreover, the trial court gave the proper instructions relating to multiple defendants and informed the jury that it had to decide separately the guilt or innocence of each of the defendants.

(Doc. 5, Ex. 10 at 2-3) [citations omitted].

Although the state courts decided the joinder issue as a matter of state law, this Court may only determine on habeas corpus review whether the joinder of petitioner's offenses violated his federal constitutional rights. *Bean v. Calderon,* 163 F.3d 1073, 1084 (9th Cir. 1998), *cert. denied,* 528 U.S. 922 (1999); *Lucero v. Kerby,* 133 F.3d 1299, 1313 (10th Cir.), *cert. denied,* 523 U.S. 1110 (1998); *Jackman v. Rees,* 803 F.2d 720 (table), No. 85-5523, 1986 WL 17761, at **2 (6th Cir. Sept. 9, 1986) (unpublished), *cert. denied,* 480 U.S. 937 (1987); *Corbett v. Bordenkircher,* 615 F.2d 722, 724 (6th Cir.), *cert. denied,* 449 U.S. 853 (1980). "[I]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder . . . rise[s] to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his . . . right to a fair trial." *Lucero,* 133 F.3d at 1314 (quoting *United States v. Lane,* 474 U.S. 438, 446 n.8 (1986)); *see Jump v. Gibson,* 20 Fed.Appx. 764, 767 (10th Cir. 2001), *cert. denied,* 536 U.S. 966 (2002); *Stribling v. Smith,* No. 97-CV-71848-DT, 2000 WL 796181, at *8, n. 7 (E.D. Mich. May 31, 2000) and cases cited therein. *Cf. Castro v. Fisher,* No. 04 Civ. 346 DLC, 2004 WL 2525876, at *5 (S.D.N.Y. Nov. 8, 2004) ("No Supreme Court opinion has ever addressed when severance is constitutionally mandated or how a federal habeas court should review a state court's denial of a severance motion.")

In assessing the need for severance, the court considers (1) whether the defendant has a bona fide need for his co-defendant's testimony, (2) the contents of the testimony, (3) the exculpatory value of the testimony, and (4) the likelihood that the co-defendant will testify. *See, e.g., Taylor v. Singletary,* 122 F.3d 1390, 1392 (11th Cir. 1997).

In this case, the trial court held a hearing on petitioner's motion for severance. (Vol. I, Tr. 64). McBride testified that he did not run into petitioner until 3:00 a.m. on March 15 which was after the robbery occurring

on the night of March 14. (Vol. I, Tr. 107; Tr. 511). McBride further indicated that he would testify to that effect if petitioner's trial were severed. (Tr. 115).

In applying the first severance factor, the Ohio Court of Appeals determined that there was not a significant need for McBride's testimony because petitioner could establish his alibi through the testimony of his girlfriend. With respect to the fourth factor, both the Ohio Court of Appeals and the trial court expressed doubt as to whether McBride would actually testify. (Tr. 129). Although he ultimately agreed to testify when questioned at the hearing, at first he indicated that he would take the Fifth. (Tr. 112). He also represented to his counsel that he would not testify. (Tr. 122, 129). Although McBride's testimony had some exculpatory value, it was not as probative as Ms. Howze's testimony that petitioner was with her at the time of the offense. (Tr.814-816).

Taking into account these factors, the Court concludes that the denial of severance did not unduly prejudice petitioner as to deprive him of a fair trial.[1]

## II. Petitioner's Fourth Amendment Claim, asserted as his second ground for relief, is not cognizable.

As his second ground for relief, petitioner alleges that the trial court erred in failing to suppress the contents of his car which the police uncovered through an illegal search.

The scope of review of alleged Fourth Amendment violations in federal habeas corpus proceedings is extremely narrow. "[W]here the State has provided an opportunity for a full and fair litigation of a Fourth

---

[1] Petitioner has not asserted that he was denied his Sixth Amendment right to present witnesses in his own defense as a result of the state court's failure to sever. This right encompasses "material and favorable" witnesses whose testimony would "put the whole case in such a different light as to undermine confidence in the verdict." *Taylor v. Singletary,* 122 F.3d 1390, 1394, 1395 quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982) and *Kyles v. Whitley*, 514 U.S. 419 (1995). In light of the victim's unshakable identification of petitioner, McBride's testimony had little or no effect on the verdict.

Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted). To determine whether a petitioner was afforded a full and fair opportunity in the state courts to litigate his Fourth Amendment claim, a federal habeas corpus court must make two distinct inquiries: (1) whether the State has provided a procedural mechanism through which, in the abstract, petitioner could raise a Fourth Amendment claim; and (2) whether petitioner's presentation of the claim was in fact frustrated because of a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir.), *cert. denied*, 459 U.S. 948 (1982).

Ohio provides an adequate procedural mechanism for the litigation of Fourth Amendment claims in the form of a pretrial motion to suppress pursuant to Ohio R. Crim P. 12, and a direct appeal as of right from an order denying a motion to suppress pursuant to Ohio R. App. P. 3 and 5. Therefore, under the first inquiry, Ohio's mechanism for the resolution of Fourth Amendment claims, in the abstract, presents the opportunity to raise such claims. *Id.*

Under the second inquiry, petitioner has not pointed to any impediment which frustrated the presentation of his Fourth Amendment claim in the Ohio courts. Indeed, it appears from the record presented that petitioner in fact was afforded a full and fair hearing of his claims in both the trial court and Ohio Court of Appeals. (Doc. 5, Ex 10 at 3; Tr. 13-96).

Accordingly, the Court concludes that Ohio's procedural mechanism afforded petitioner with an opportunity to fully and fairly litigate his Fourth Amendment claim in the state courts. Therefore, petitioner may not relitigate the claim in this habeas corpus action. *See Powell*, 428 U.S. at 494-95; *see also Nabozny v. Marshall*, 781 F.2d 83, 84 (6th Cir.), *cert. denied*, 476 U.S. 1161 (1986); *cf. Gilbert v. Parke*, 763 F.2d 821, 823-24 (6th Cir. 1985).

## III. Petitioner is not entitled to habeas corpus relief based on his *Batson* claim, asserted as his third ground for relief.

In his third ground for relief, petitioner asserts that he was denied his

9

constitutional rights when the trial court upheld the prosecutor's use of peremptory challenges to remove two African-Americans from the jury panel based on their race.

"It is well settled that a state denies a defendant equal protection of the laws when he is tried before a jury from which members of his race have been purposefully excluded." *United States v. Harris,* 192 F.3d 580, 586 (6th Cir. 1999) (citing *Strauder v. West Virginia,* 100 U.S. 303 (1879)). In *Batson v. Kentucky,* 476 U.S. 79 (1986), the Supreme Court extended this principle to the use of peremptory challenges in the selection of the petit jury, holding that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *See Batson,* 476 U.S. at 85-89.

The Court outlined a three-step approach for evaluating a claim that the prosecutor used peremptory challenges to exclude jurors on the improper basis of race. First, the defendant must make a *prima facie* showing of purposeful discrimination by the prosecutor in the selection of the jury. *See id.* at 96-97; s*ee also Hernandez v. New York,* 500 U.S. 352, 358 (1991) (plurality opinion). A defendant establishes a *prima facie* case by showing he is a member of a cognizable racial group; the prosecutor has exercised peremptory challenges to remove from the jury members of the defendant's race; and these facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude persons from the petit jury on account of their race. *Harris,* 192 F.3d at 586 (citing *United States v. Hill,* 146 F.3d 337, 340 (6th Cir. 1998) (quoting *Batson,* 476 U.S. at 96)).

Once the defendant makes a *prima facie* showing of purposeful discrimination, the burden shifts to the State to come forward with a race-neutral explanation for challenging black jurors. *Batson,* 476 U.S. at 97. This is an extremely light burden. *Harris,* 192 F.3d at 586. At this step of the inquiry, the explanation tendered by the prosecutor need not be persuasive nor even plausible. *Purkett v. Elem,* 514 U.S. 765, 768 (1995) (*per curiam*). As the Court explained in *Hernandez*: "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the

10

prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez,* 500 U.S. at 360 (plurality opinion).

It is not until the third step that the persuasiveness of the State's justification becomes relevant. *Purkett,* 514 U.S. at 768. At this step of the inquiry, the court must determine whether the defendant has met his burden of proving purposeful discrimination. *Hernandez,* 500 U.S. at 359, 363 (plurality opinion) (citing *Batson,* 476 U.S. at 98). "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett,* 514 U.S. at 768. The trial court's decision at this step of the inquiry on the ultimate question of discriminatory intent represents a finding of fact to be accorded "great deference" by a reviewing court. *Hernandez,* 500 U.S. at 364 (plurality opinion); *see also Batson,* 476 U.S. at 98 n.21. "Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because . . . the finding 'largely will turn on evaluation of credibility.'" *Hernandez,* 500 U.S. at 365 (plurality opinion) (quoting *Batson,* 476 U.S. at 98 n.21)). In the typical case, the decision will turn on whether counsel's race-neutral explanation for a peremptory challenge should be believed, wherein there "will seldom be much evidence bearing on that issue" and the "best evidence often will be the demeanor of the attorney who exercises the challenge." *Id.* "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Id.* (quoting *Wainwright v. Witt,* 469 U.S. 412, 428 (1985)). Deference is particularly warranted in cases where the proffered race neutral explanation centers on the juror's body language, mannerisms, intonation and demeanor, factors which are given to "on-the-spot interpretation" by the trial judge. *See Lyons v. Lee,* 203 F. Supp. 2d 512, 535 (M.D.N.C. 2002) (and cases cited therein), *appeal dismissed,* 316 F.3d 528 (4th Cir.), *cert. denied,* 540 U.S. 908 (2003).

On direct review of a state-court judgment, the court may not overturn the trial court's finding on the issue of discriminatory intent unless convinced that the determination was clearly erroneous. *Id.* at 369. In this federal habeas corpus proceeding, the state courts' factual findings on this issue are presumed correct unless petitioner demonstrates by clear and convincing evidence that such findings are erroneous. *See* 28 U.S.C. § 2254(e)(1); *Purkett,* 514 U.S. at 769; *Hernandez,* 500 U.S. at 366 (plurality opinion).

The Ohio Court of Appeals addressed petitioner's *Batson* claim, as follows:

In his third assignment of error, Watson asserts that the state's use of peremptory challenges to remove two prospective African-American jurors was racially motivated. To establish a prima facie case of racial discrimination in the selection of a jury, the defendant must establish that members of a racially cognizable racial group have been peremptorily challenged and that the facts raise an inference that the prosecutor has used the peremptory challenges to exclude jurors on account of their race. If the defendant makes a prima facie case of discrimination, the state must then provide a race-neutral explanation for its use of the challenges.

In the case at bar, we assume, without deciding that Watson established a prima facie case of discrimination. The prosecutor, however, explained the use of the peremptory challenge for the first juror by citing the juror's statement that she had a problem with a police officer, as well as her poor body language when the prosecutor inquired whether she could be fair and impartial when considering the testimony of numerous police officers. As to the second prospective juror, the prosecutor expressed his concern that, with only a ninth-grade education, the juror might not fully appreciate the testimony of an expert witness, as well as the juror's poor body language and demeanor indicating that she was bored with or indifferent to, the proceeding.

Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered should be deemed race-neutral. The prosecutor's explanations here were facially valid, race-neutral justifications for the use of the peremptory challenges. Therefore, we cannot say that the trial court's finding of no discriminatory intent was clearly erroneous . . .

(Doc. 5, Ex. 10 at 4-5) [citations omitted].

12

The Ohio Court of Appeals assumed that petitioner had made a *prima facie* case of discrimination because both petitioner and the jurors involved are African American. (Tr. 253-254). The court recognized that the prosecutor provided facially race-neutral reasons for exercising the peremptory challenges against the two jurors, and thus satisfied the second *Batson* step. Finally, the appellate court upheld the trial court's finding of no discriminatory intent and, therefore, rejected petitioner's *Batson* claim.

In this case, when defense counsel issued a *Batson* challenge to the removal of juror number 10, Ms. Rogers, the prosecutor explained that he dismissed her because of her familiarity with the area of the crime, a problem she had with a police officer and her body language. (Tr. 256; *see* Tr. 150, 162-163). The trial court found that to be sufficient to overcome the *Batson* challenge. (Tr. 257). The defense also challenged the dismissal of juror number 11, Ms. Copeland. (Tr. 299-301). Based on her jury questionnaire, the state expressed concern about her ability to evaluate expert testimony because of her ninth grade education. (Tr. 301-302). The prosecutor also voiced his concerns about her poor body language. (Tr. 302). The trial court found the explanations race-neutral and rejected the challenge. (Tr. 304).

Both the trial judge and the state appellate court found some of the prosecutor's proffered explanations legitimate and credible. Petitioner has failed to demonstrate by clear and convincing evidence that these findings are erroneous, *see* 28 U.S.C. § 2254(e)(1), and this Court concludes that the record supports these findings.

Accordingly, petitioner has not demonstrated that the state courts' adjudication of his *Batson* claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. §2254(d); *see also Williams,* 529 U.S. at 402-03 (O'Connor, J.). Moreover, petitioner has not pointed to nor submitted clear and convincing evidence of purposeful discrimination by the prosecution sufficient to rebut the presumption of correctness to be accorded the state court's conclusion that the prosecutor did not discriminate on the basis of race in exercising the peremptory challenges against Ms. Rogers and Ms. Copeland. *See* 28 U.S.C. § 2254(e)(1); *Purkett,* 514 U.S. at 769; *Hernandez*, 500 U.S. at 364-66;

13

*Batson*, 476 U.S. at 98 n.21. Petitioner is, therefore, not entitled to habeas corpus relief with respect to his *Batson* claim asserted as his third ground for relief.

**IV. Petitioner is not entitled to habeas corpus relief with respect to his fourth ground for relief concerning the admissibility of a law enforcement guide.**

As his fourth ground for relief, petitioner contends that the trial court erred in refusing to admit into evidence the "Eyewitness Evidence and Guide for Law Enforcement" published by the United States Department of Justice referred to by petitioner's expert witness at trial.

A writ of habeas corpus disturbing a state court judgment may issue only if a prisoner is in custody in violation of the constitution, laws, or treaties of the United States. *Pulley v. Harris*, 465 U.S. 37 (1984). Errors in state law that do not violate a specific constitutional right are not cognizable in habeas corpus, unless they result in a proceeding that is fundamentally unfair, and thus violative of the due process clause. *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983). State court rulings on the admission or exclusion of evidence may not be questioned in a federal habeas corpus proceeding, unless they render the trial so fundamentally unfair as to constitute a denial of federal rights. *Bell v. Arn*, 536 F.2d 123, 125 (6th Cir. 1976); *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982).

The defense offered the Guide for the purpose of determining whether the police followed proper procedure in the identification of petitioner. The trial court excluded the Guide as hearsay (Tr. 759, 763; Doc. 5, Ex. 10 at 5). Petitioner's expert, who played a role in assembling the guide, nevertheless testified to proper identification procedures based on the Guide. (Tr. 759, 853, 855). Under these circumstances, petitioner fails to demonstrate that the exclusion of the Guide rendered his trial fundamentally unfair. Accordingly, petitioner is not entitled to habeas corpus relief with respect to ground four of the petition.

**V. Petitioner is not entitled habeas corpus relief with respect to his sufficiency of the evidence claim asserted in ground five; and his manifest weight of the evidence claim, asserted as ground six, is not cognizable in**

**these proceedings.**

As his fifth ground for relief, petitioner argues that his convictions for aggravated robbery and robbery were not supported by sufficient evidence. As his sixth ground for relief, petitioner argues that his robbery and aggravated robbery convictions were against the manifest weight of the evidence.

The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). When petitioner raises an insufficiency of evidence claim in a petition for a writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original). This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983). It is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the jury which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (*per curiam*), *cert. denied,* 490 U.S. 1049 (1989).

The Due Process Clause of the Constitution only forbids convictions based on "evidence insufficient to persuade a rational factfinder of guilt beyond a reasonable doubt." *Tibbs v. Florida,* 457 U.S. 31, 45 (1982). As both the United States and Ohio Supreme Courts have recognized, the standard employed when reviewing a claim that a guilty verdict was against the manifest weight of the evidence is both quantitatively and qualitatively different from the standard used when considering a constitutional due process claim based upon the sufficiency of evidence. *See id.* at 44-45*; State v.*

15

*Thompkins,* 678 N.E.2d 541, 546 (Ohio 1997), *superseded by state constitutional amendment on other grounds in State v. Smith,* 684 N.E.2d 668 (Ohio 1997); *see also State v. Mardis,* 729 N.E.2d 1272, 1274 (Ohio Ct. App. 1999), *motion for delayed appeal denied,* 755 N.E.2d 354 (Ohio 2001).

The manifest weight of evidence standard is a broader test than the standard used to evaluate the sufficiency of evidence. *State v. Martin,* 485 N.E.2d 717, 720 (Ohio Ct. App. 1983); *see also State v. Thompson,* 713 N.E.2d 456, 468 (Ohio Ct. App.), *appeal not allowed,* 700 N.E.2d 334 (Ohio 1998); *cf. Tibbs,* 457 U.S. at 41-45. In essence, sufficiency, which implicates due process concerns, tests the adequacy of the evidence in proving the essential elements of the offense charged and presents a question of law, which may not be resolved by the reviewing court through weighing the evidence. In contrast, in determining whether reversal is warranted based on the weight of the evidence, the appellate court sits as a "thirteenth juror" to assess the jury's resolution of conflicting testimony upon review of the entire record, which includes weighing the evidence and all reasonable inferences and considering the credibility of witnesses. *Thompkins,* 678 N.E.2d at 546-47; *see also Tibbs,* 457 U.S. at 41-42; *Martin,* 485 N.E.2d at 720-21.

As the Supreme Court explained in *Tibbs,* 457 U.S. at 43, unlike a reversal on the ground of insufficient evidence, a reversal based on the weight of the evidence "does not mean that acquittal was the only proper verdict." Rather, a reversal based on the weight of the evidence "can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment." *Id.* at 42-43.

A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.), *cert. denied,* 488 U.S. 866 (1988). Accordingly, this Court concludes petitioner's claim in ground six of the petition that his robbery and aggravated robbery convictions were against the manifest weight of the evidence does not implicate constitutional concerns, but, instead, only raises an issue of state law that is not cognizable in this federal habeas corpus

action.

On the other hand, petitioner's sufficiency of evidence claim raises a constitutional issue which this Court may consider.  The Ohio Court of Appeals addressed petitioner's insufficiency of evidence claims, as follows:

> R.C. 2911.01(A)(1), which defines aggravated robbery, provides that "[n]o person, in attempting or committing a theft offense * * *, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
>
> In the case at bar, there was no insufficiency in the state's proof.  The state produced evidence that two men had approached Frierson, drawn their guns on him and taken his wallet, gold chain, and a leather coat.  Frierson later identified Watson and McBride as the men who robbed him.

(Doc. 5, Ex. 10 at 6).

Ohio Rev. Code §2911.02 provides that "[n]o person, in . . . committing a theft offense . . . shall . . .(1) Have a deadly weapon on or about the offender's person."

As the Ohio Court of Appeals determined, the victim testified that two men approached him, each pulled out a gun, pointed it at him, and proceeded to rob him.  (Tr. 515-516).  The victim picked petitioner and his co-defendant out of a photo array as the perpetrators.  (Tr. 532, 718).  The items taken consisted of a wallet, gold chain, and a white leather coat with a dragon on the back.  (Tr. 531, 631).  Co-defendant McBride was wearing the victim's coat and and carrying the victim's driver's license when McBride was arrested at a local Walgreens along with petitioner a few hours later.  (Tr. 639, 645-646).  Petitioner's car keys opened a car containing a holster and a round of live ammunition.  (Tr. 644, 646-647).  Viewing this evidence in the light most favorable to the prosecution, any rational juror could have found petitioner guilty of aggravated robbery and robbery beyond a reasonable doubt.  Moreover, the ruling of the Ohio Court of Appeals on the sufficiency of

17

evidence with respect to aggravated robbery[2] comports with the United States Supreme Court's *Jackson* standard and was based on a reasonable assessment of the facts in light of the record evidence.

Accordingly, petitioner is not entitled to habeas corpus relief with respect to his fifth and sixth claims.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2. A certificate of appealability should issue with respect to the constitutional claim alleged in Ground One because reasonable jurists could debate whether this claim should have been resolved in a different manner and, alternatively, whether the issue presented in this ground for relief is "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)). A certificate of appealability should not issue with respect to petitioner's remaining claims, because for the foregoing reasons, petitioner has failed to make a substantial showing of the denial of a constitutional right remediable in this federal habeas corpus proceeding. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Petitioner has not shown that reasonable jurists could debate whether these claims should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack,* 529 U.S. at 483-84) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would

---

[2] The Ohio Court of Appeals did not address the sufficiency of evidence to support the robbery charge because the state court indicated that petitioner had not been convicted of robbery. (Doc. 5, Ex. 10 at 6, n. 17). While the two counts were merged for sentencing, it does appear that petitioner was convicted of both offenses. (Doc. 5, Ex. 5).

be taken in "good faith," and therefore GRANT petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  April 18, 2005                      s/Timothy S. Black

hr                                        Timothy S. Black
                                          United States Magistrate Judge

J:\ROSENBEH\2254(2005)\02-828joinder&bats&suffPUB.wpd

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Anthony Watson,
        Petitioner

        vs                                Case No. 1:02cv828
                                          (Beckwith, J.; Black, M.J.)

Pat Hurley,
            Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the
Honorable Timothy S. Black, United States Magistrate Judge, in the above-
entitled habeas corpus action brought under 28 U.S.C. § 2254.  Any party may
object to the Magistrate Judge's Report and Recommendation within **fifteen
(15) days** after the date the Report and Recommendation is stamped as "filed"
by the Clerk of Court.  Such party shall file with the Clerk of Court and serve
on all other parties written objections to the Report and Recommendation,
specifically identifying the portion(s) of the proposed findings,
recommendations, or report objected to, together with a memorandum of law
setting forth the basis for such objection(s).  Any response by an opposing
party to the written objections shall be filed within ten (10) days after the
opposing party has been served with the objections.  A party's failure to make
objections in accordance with the procedure outlined above may result in a
forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985);
*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).